**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**EASTERN DIVISION**

JOHN K. MACINNIS, PLAINTIFF
REG. #08355-029

v. 2:15CV00174-KGB-JTK

UNITED STATES OF AMERICA DEFENDANT

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Kristine G. Baker. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the

District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## DISPOSITION

### I. Introduction

Plaintiff John MacInnis is a federal inmate incarcerated at the Forrest City Low Federal Correctional Institution (FCI), who filed this pro se action pursuant to the Federal Tort Claims Act (FTCA), based on the alleged inadequate medical care and treatment for urinary tract, prostate, and kidney infections. (Doc. No. 2) Plaintiff asks for monetary relief from the Defendant.

This matter is before the Court on the Defendant's Motion for Summary Judgment, Brief in Support and Statement of Facts (Doc. Nos. 11-13), to which Plaintiff responded (Doc. Nos. 15-16).

### II. Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

**A. Defendant's Motion**

Defendant asks the Court to dismiss Plaintiff's claims based on his failure to provide required expert testimony to support his medical malpractice claim, as required by Arkansas law. An action for medical injury filed pursuant to the FTCA, 28 U.S.C. § 2671, et seq., is prosecuted under the Arkansas Medical Malpractice Act, ARK. CODE ANN. § 16-114-201, et seq. Defendant states that pursuant to the statute, Plaintiff must prove, by expert testimony, the degree of skill and learning ordinarily possessed by the medical care providers in the same or similar locality, a deviation of the standard of care, and that he sustained an injury that, without a deviation from the applicable standard of care, would not have otherwise occurred. (Id., § 16-114-206(a)(1))

However, Defendant states, Plaintiff lacks medical expert testimony in this case, and therefore, cannot prove negligence as a matter of law. The discovery deadline was July 5, 2016, and Plaintiff has not disclosed an expert witness. In addition, expert testimony is necessary in this case, because Plaintiff's claim that he received "improper and incompetent medical care ... including failure to remove a catheter on a timely basis ....," is not within the common knowledge of law

persons. (Doc. No. 2, p. 2) In addition, without such, Plaintiff cannot prove that any injury he sustained was due to a deviation in the standard of care, and would not have otherwise occurred.

In the alternative, Defendant asks the Court to dismiss Plaintiff's Complaint because the Declaration of Dr. Martin Tindel, Clinical Director at FCC Forrest City, establishes that the medical care providers provided Plaintiff with timely and adequate health care. (Doc. No. 12-1, pp. 2-5) Defendant states that Plaintiff disagrees with the standard of care he received, which is not sufficient to rebut the declaration and the medical evidence.

According to Plaintiff's medical records, Plaintiff reported to health services on January 28, 2013, complaining of chills and shaking, and his evaluation was unremarkable, with no significant findings and no apparent distress. (Doc. No. 12-1, pp. 23-25) He was advised to return to sick call as needed. (Id.) He returned on January 30, 2013, complaining of urinary retention and constipation for two days. (Id., pp. 27-30) The medical practitioner ordered an abdominal x-ray and gave Plaintiff a rectal examination and an oral laxative. (Id.) He also was advised to return immediately upon worsening of his condition. (Id.) Plaintiff reported on January 31, 2013, that he felt better and had bowel movements and voiding without difficulty. (Id., pp. 35-38) On February 6, 2013, Plaintiff was evaluated due to abnormal laboratory values. (Id., pp. 41-44) The Clinical Director recommended treating Plaintiff as an outpatient and re-ordered labs. (Id.) Plaintiff was transported to St. Francis Hospital on February 8, 2013, for acute renal insufficiency, and a long-term catheter was inserted. (Id., p. 50)

Plaintiff returned to FCI on February 11, 2013, and reported improvement, together with a prescription for pain medication which was substituted by FCI based on the Bureau of Prisons Formulary. (Id., pp. 52-55) He was told the catheter could be removed, but he was apprehensive

and asked to leave it in at that time. (Id., p. 52) He was examined by an outside urologist on February 22, 2013. (Id., pp. 60-67) The examination indicated that he suffered from urinary retention and an elevated PSA. (Id., p. 64) The urologist discussed various treatments with Plaintiff and more laboratory work was conducted in an effort to discover the cause of his problems. (Id.) He as seen at the health services on February 26, 2013, and a consult was placed for removal of the catheter. (Id., pp. 70-72)

On March 8, 2013, Plaintiff reported to the health services and requested tape to secure the catheter to his leg. (Id., pp. 74-75) He returned on April 4, 2013 for a follow-up visit, complaining of pain at the tip of his penis. (Id., p. 77) However, he refused to allow the practitioner to evaluate; a urology consult was ordered and Acetaminophen/Codeine was prescribed. (Id.) On May 2, 2013, Plaintiff reported to health services and requested to have the catheter removed. (Id., p. 81) However, he decided to leave it in place, after he was educated about the consequences of the removal and the reason for its placement. (Id., p. 83) He reported a small amount of blood from his penis and that his pain was at a level of 8 out of 10, and he reported that he had not self-treated with Tylenol or Motrin. (Id., p. 81) An evaluation revealed "minimal yellow crusting and mucous from glans penis with no erythema and no edema." (Id., p. 82) He was provided instructions for proper hygiene and catheter care. (Id., p. 83)

Plaintiff visited health services on May 15, 2013 and reported no blood but some drainage from his penis, with a pain level of 8 out of 10. (Id., p. 87) An evaluation revealed a dry and intact wound with no erythema and no ulceration. (Id., p. 88) He was provided instructions for proper hygiene and catheter care. (Id., pp. 88-89) He was transported to urology on May 24, 2013 for removal of the catheter, and reported no distress or pain upon his return. (Id., pp. 91-94) A three-

month urology follow-up consult was submitted on June 11, 2013, and on August 9, 2013, he was examined and reported no pain or difficulty urinating. (Id., pp. 97, 99-103) He was again examined on June 26, 2014, and reported no pain or difficulty urinating. (Id., pp. 106-108).

Based on a review of these records, Dr. Tindel states that since May 24, 2013, Plaintiff has not reported unresolved pain or difficulty urinating, and that no record supports his claim of a shrunken penis, erectile dysfunction, or urinating sitting down with the aid of an absorbent. (Id., p. 5). Dr. Tindel concludes that Plaintiff received timely and substantial health care which meets the community's standard of care for health care treatment. (Id.)

**B. Plaintiff's Response**

Plaintiff claims that he suffered significant pain, bleeding and infection as a result of the long-term catheter which was left without care or maintenance for 105 days. He states that although he was instructed about external care, he suffered an internal infection without care or medication and was denied pain medications for over three months. He also claims Defendant failed to properly examine, diagnose, or treat him for physical symptoms indicating prostate cancer. He disputes Defendant's statement that he refused examinations, refused to care for the catheter properly, and denied further discomfort. He states he has submitted numerous written and verbal requests for care and treatment, with negative results. He complains that the lab tests taken on February 6, 2013 indicated critical levels, but that he was not taken to a hospital until two days later. He states that the delays in treatment damaged his kidneys and will require him to undergo dialysis in the future. In addition, he complains that he was not provided proper hardware for his catheter, which caused infections and pain and suffering. Although he states in his declaration that he did not agree to keep the catheter (Doc. No. 15, p. 4), he states in his Response that he "concluded that he would continue

to endure the pain of the catheter in order to avoid being force to become infirm once again." (Doc. No. 16, p. 3)

**C. Analysis**

In this FTCA action, this Court is bound to apply the law of the state in which the alleged acts occurred. 28 U.S.C. § 1346(b); Goodman v. United States, 2 F.3d 291, 292 (8th Cir. 1993). As noted by Defendant, the Arkansas Medical Malpractice Act governs in this case, and requires that Plaintiff produce expert testimony to prove that Defendant deviated from the standard of care ordinarily possessed by the medical care providers in the same locality, causing Plaintiff to sustain an injury that would not otherwise have occurred. ARK. CODE ANN. § 16-114-206.[1] The Court finds that the applicable standard of care in this case is not a matter of common knowledge, and that an expert witness is necessary to establish that the delay was a deviation from the standard of care and caused Plaintiff an injury that otherwise would not have occurred. Plaintiff alleges that he was not treated timely, that the delays and infection he suffered damaged his kidneys and could require him to undergo dialysis at some future time. He also complains that Defendant failed to properly treat him for possible prostate cancer. The Court finds that an expert witness is necessary to support these allegations, to address the applicable standard of care, and to opine whether an unacceptable deviation occurred. "[W]ithout expert testimony demonstrating why the recommendations should be followed, the jury cannot know how, why, or whether the alleged negligence caused the plaintiff's harm." Mitchell v. Lincoln, 366 Ark. 592, 599, 237 S.W.3d 455, 460 (2006). See also

[1]In Broussard v. St. Edward Mercy Health System, Inc., 2012 Ark. 14, 386 S.W.3d 385 (Ark. 2012), the court struck language in the statute which required that the expert testimony be provided by a medical care provider of the same specialty as the defendant. The remaining language of the statute was upheld.

Rueben v. United States, No. 2:13CV00033-DPM-JTK, 2014 WL 5460574 (E.D.AR), aff'd, 614 Fed.Appx. 861, 2015 WL 5449531 (September 17, 2015).

The Court further notes that the incidents at issue occurred in 2013, and that Plaintiff has had sufficient time in which to obtain an expert's opinion. Absent such, Plaintiff cannot support a FTCA claim against the Defendant.

## III. Conclusion

IT IS, THEREFORE, RECOMMENDED that Defendant's Motion for Summary Judgment (Doc. No. 11) be GRANTED, and Plaintiff's Complaint against Defendant be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 1st day of September, 2016.

JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE